UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| GARY L. LOVE, )  | |
| ) | |
| *Plaintiff*, ) | |
| ) | Case No. 1:07-cv-80 |
| v. ) | |
| ) | Judge Mattice |
| ELECTRIC POWER BOARD OF ) | |
| CHATTANOOGA, ) | |
| ) | |
| *Defendant*. ) | |

## MEMORANDUM AND ORDER

Plaintiff Gary L. Love (hereinafter "Plaintiff") initiated the instant action against the Electric Power Board of Chattanooga (hereinafter "EPB" or "Defendant") for: (1) age discrimination under the Age Discrimination in Employment of Act ("ADEA") with respect to his termination; (2) age discrimination for EPB's alleged failure to transfer him to another position; (3) retaliation for the alleged complaints; and (4) hostile work environment. (Court Doc. 1, Pl.'s Compl. at 6).

EPB has moved the Court for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Pursuant to Local Rule 7.1(b), EPB also seeks leave from the Court to accept its Memorandum in Support of Summary Judgment, which exceeds the Court's twenty-five (25) page limit as established in Rule 7.1(b) of the Local Rules for the United States District Court for the Eastern District of Tennessee. [Court Doc. 32, Def.'s Br.1-29.]

For the reasons explained below, Defendant's Motion for Leave to File Excess Pages [Court Doc. 33] will be **GRANTED.** Defendant's Motion for Summary Judgment

[Court Doc. 31] will be **GRANTED.** Plaintiff's claims against Defendant will be hereby **DISMISSED WITH PREJUDICE.**

## I.      LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material facts exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To refute such a showing, the nonmoving party must present some significant, probative evidence indicating the necessity of a trial for resolving a material factual dispute. *Id.* at 322. A mere scintilla of evidence is not enough. *Anderson*, 477 U.S. at 252; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). The Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party. *Anderson*, 477 U.S. at 248-49; *Nat'l Satellite Sports*, 253 F.3d at 907. If the nonmoving party fails to make a sufficient showing on an essential element of its

case with respect to which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## II. FACTS

Viewing the facts in the record before it and all inferences that can be drawn therefrom in the light most favorable to Plaintiff, the Court finds as follows.

Plaintiff began working for EPB on November 2, 1987 as an Engineer Tech I. (Court Doc. 32-2, Love Dep. at 27-28.) As an Engineer Tech I, Plaintiff's job duties primarily involved redesigning and rebuilding existing power lines that served EPB customers. (*Id.* at 29). In 1995, Plaintiff began working as an Engineer Tech II in EPB's new business department. (*Id.* at 44-45, 104.) This position's duties were similar to those that Plaintiff performed as an Engineer Tech I. (*Id.* at 45, 50.) The new position, however, also required Plaintiff to meet with new customers and to design power systems for new businesses. (*Id.* at 45, 50, 72-73.) Plaintiff was also required to address urgent customer needs in a timely fashion, such as restoring power to a customer following a storm or dealing with customer voltage programs. (*Id.* at 62, 65-66.) Plaintiff, along with the newly formed business development group, was also tasked with tracking the schedules of the engineering technicians in order to ensure sufficient coverage existed on a particular day. (*Id.* at 113.) Plaintiff worked within a 600 square-mile area comprising EPB's service territory and often used EPB's company vehicle to meet with customers and respond to

service issues. (*Id.* at 31.) Aside from visiting customers on-site, Plaintiff spent roughly half of his work time designing projects and picking up customer work orders in EPB's Chattanooga office.

In November 2005, EPB initiated a reorganization of its employees. (Court Doc. 32, Def.'s Br. at 5.) Plaintiff, as well as other members of the new business development group, were assigned to the Economic Development Division (the "Division"). *Id.* Following the restructuring, Sam Stephens served as Plaintiff's immediate supervisor, Judy Burnett served as manager of the Division, and Diana Bullock served as Vice President of the Division. *Id.* In the newly formed Division, Mr. Stephens reported to Ms. Burnett, and Ms. Burnett report to Ms. Bullock. *Id.*

The management of this new Division sought to improve the manner in which employees executed business development tasks and sought ways to improve employee training and credentialing as a means to improve customer service. (*Id.*) For example, on February 7, 2006, Ms. Burnett, Plaintiff's manager, informed members of the Division that a training program was scheduled from February 20, 2006 to February 22, 2006. (Def.'s Br. at 6-7.) These dates were chosen after Ms. Burnett confirmed that none of the Division's employees had scheduled leave on the Division's scheduling calendar. (*Id.*) The scheduled training program involved a third-party professional who was retained to train the Division's employees on customer service skills. (*Id.*) The training concluded with an exam. (*Id.*) Employees who passed this exam would be certified as a Key Public Power Account Executive. (*Id.*)

-4-

After receiving Ms. Burnett's e-mail announcing the above-mentioned training, Plaintiff notified her that he was unavailable on the dates of the training. (Love Dep. at 120.) Ms. Burnett informed Plaintiff that his attendance at the training was mandatory. (Love Dep. Ex. 7.) Plaintiff contends that he informed his direct supervisor, Mr. Stephens, that he wanted to take a vacation during the week of February 20, 2006. (*Id.*) Mr. Stephens, however, claimed Plaintiff did not specify the dates he wished to take off work. In addition, Plaintiff failed to request any days off on the Division calendar which employees were required to schedule his or her leave. (*Id.*)

On February 10, 2006, Ms. Burnett sent the Division employees an e-mail, which stated that the February 20, 2006 training was mandatory. (Def.'s Br. at 7.) Plaintiff sent a response to Ms. Burnett, on which every employee in the Division was copied, requesting that EPB reimburse him in the amount of $1,600.00. (*Id.*) Plaintiff claimed these fees represented the costs he had incurred in planning his vacation. (*Id.*) When Plaintiff was confronted by Ms. Burnett about sending this e-mail to the entire Division, he responded "[n]ot to my knowledge." (*Id.* at 7-8.) Ms. Burnett, however, did not believe Plaintiff was telling the truth and was concerned that he may have mislead customers. (*Id.* at 8.)

On February 15, 2006, Plaintiff received a written warning from Ms. Burnett, stating that his actions were inappropriate and unacceptable. (*Id.* at 8.) The written warning also informed Plaintiff that EPB expected a significant improvement in his behavior. Specifically, the letter stated that Ms. Burnett did not believe Plaintiff was being forthright about sending an e-mail to all Division employees and explained her "expectation is that when you are asked a question that you will reply in an open and honest manner." (Court

-5-

Doc. 32-1, Love Dep. Ex. 10 at 1)  The letter also stated that Plaintiff's decision to e-mail "everyone asking for reimbursement for your trip" was "inappropriate and is totally unacceptable in this Division." (*Id.*) Ms. Burnett also informed Plaintiff that she "expect[ed] that this will never happen again either with an internal or external customer" and cautioned him that "[a]ny future instance of unprofessional behavior will result in suspension up to and including termination." (*Id.*) Additionally, Plaintiff was informed that attendance at the upcoming training was mandatory and that he did not have permission to take leave. (*Id.*)

Plaintiff continued to seek approval for additional vacation time.  On February 15, 2006, Plaintiff requested that EPB allow him to take February 16, and 17, 2006 off from work. (*Id.* at 9) Hal Gault, an employee in EPB's Human Resources Department, informed Plaintiff that management, including Ms. Burnett and Ms. Bullock, had determined that Plaintiff was not entitled to vacation because it had not been entered on the Division's calendar. (*Id.*) Unsatisfied with this response, Plaintiff sent an e-mail to EPB's upper-level managers, including EPB President Harold Depriest, which stated that he believed the denial of his vacation request was "unfair." (*Id.*) Plaintiff did not report to work on February 16, 2006 or on February 17, 2006. (*Id.*)  Plaintiff did return on February 20, 2006, completed the training, passed the exam, and was certified as a Key Public Power Account Executive. (Court Doc. 39, Pl.'s Br. at 6.)

During February 2006, Plaintiff also applied for transfer to an open position in EPB's Improvement Group. (Court Doc. 9, Amend. Compl. ¶ 14.)  Specifically, Plaintiff applied for an Engineer Tech II position in the Improvement Group. (Def.'s Br. at 19.)  EPB

-6-

claimed that Plaintiff's transfer request was not approved because he "was not qualified to apply for such position" under the terms of the job posting. (*Id.* at 20.)

On March 14, 2006, Plaintiff returned to the office and met with Ms. Bullock, Ms. Burnett, and Mr. Stephens to discuss Plaintiff's failure to properly request and schedule the leave he took on February 16, 2006 and February 17, 2006. (Def.'s Br. at 9-10) Effective February 23, 2006, EPB suspended Plaintiff's employment indefinitely. (*Id.* at 10.) This suspension was based on Plaintiff's unauthorized use of leave on February 16 and 17, 2006. (*Id.*)

On March 3, 2006, Plaintiff met with Ms. Bullock, Ms. Burnett, and Tony Powell, an employee in EPB's Human Resources Department, to discuss the terms of his return to work. Plaintiff brought a tape recorder to the meeting and refused to turn it off. (Def.'s Br. at 10.) That meeting was adjourned. (*Id.*) The parties met again on March 14, 2006. (*Id.*) Plaintiff was provided with a memorandum which included eleven (11) performance expectations that he was required to follow, which included being honest with management, exercising good professional judgment, and complying with all of EPB's personnel policies. (*Id.*) EPB's suspension was lifted and Plaintiff was permitted to return to work. (*Id.*)

On March 15, 2006, Ms. Burnett sent all the employees in the Division a memorandum which outlined the Division's new time keeping guidelines. (Def.'s Br. at 10-11.) Each employee was required to keep a log of his or her activities throughout the workday and was required to turn in a copy of that log to a supervisor by 5:00 p.m. each day. (*Id.* at 11.) On March 14, 2006, EPB placed a Global Positioning System ("GPS") on

Plaintiff's work vehicle. (*Id.*) EPB uses GPS units as a means to confirm vehicle locations and to improve efficiency and accountability. (*Id.*)

From March 17, 2006 through March 24, 2006, Plaintiff filled out a daily activity log. (Def.'s Br. at 11.) Plaintiff's activity log, however, conflicted with the GPS reports from his vehicle. (*Id.*) The log contains numerous entries indicating that Plaintiff was conducting work on behalf of EPB, while the GPS unit in EPB's vehicle indicates that he was at his residence. (*Id.* at 11-12.) Before relying on the GPS reports, Ms. Burnett verified that the GPS system in Plaintiff's vehicle was functioning in an accurate manner. (*Id.* at 12.) Ms. Burnett subsequently recommended that Plaintiff's employment with EPB be terminated. (*Id.*) On March 30, 2006, Ms. Burnett and Ms. Bullock met with Plaintiff to discuss the discrepancies between his daily logs and his vehicle's GPS reports. (*Id.* at 13.) Plaintiff did not explain the discrepancies and was subsequently fired for falsifying company records and misusing company time. (*Id.*)

III.    **ANALYSIS**

A.    **Defendant's Motion for Leave to File Excess Pages**

EPB seeks to have the Court accept its Memorandum in Support of Summary Judgment, which exceeds the twenty-five (25) page limit established in Local Rule 7.1(b). Local Rule 7.1(b) provides that "briefs shall include a concise statement of the factual and legal grounds which justify the ruling sought from the court. Briefs shall comply with the format requirements of Local Rule 5.1 and shall not exceed 25 pages in length unless otherwise ordered by the court." Due to the complexity of Plaintiff's claims, the Court will

accept EPB's brief.  Accordingly, the Court will **GRANT** EPB's Motion to Exceed Page Limitation.

**B.    ADEA Legal Standard**

The ADEA, 29 U.S.C. §§ 621-634, is the exclusive remedy for age discrimination. *Id.*; see also *Lowell v. Armstrong*, No. 93-5665, 1999 U.S. Dist. LEXIS 16545, at * 12 (6th Cir. June 30, 1995) (noting "the Age Discrimination in Employment Act is the exclusive remedy for age discrimination suits.")   The prima facie elements of an ADEA age discrimination claim are as follows: (1) he was a member of the protected class; (2) he was subjected to an adverse employment action; (3) he was qualified for the particular position; and (4) was replaced by a younger worker.  *Barnes v. GenCorp.*, 896 F.2d 1457, 1465 (6th Cir. 1990).

A plaintiff can meet this burden in one of two ways: either by presenting direct evidence of discrimination or by satisfying, through circumstantial evidence, the burden-shifting analysis outlined in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973).  *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 620 (6th Cir. 2006); *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 547-48 (6th Cir. 2004).  When a plaintiff presents direct evidence of discrimination, "the burden of both production and persuasion shifts to the employer to prove that it would have terminated the employee even if it had not been motivated by impermissible discrimination."  *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

 "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn*

*v. Schering-Plough Healthcare Prods. Sales Corp*., 176 F.3d 921, 926 (6th Cir. 1999).

"Consistent with this definition, direct evidence of discrimination does not require a fact finder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co*., 319 F.3d 858, 865 (6th Cir. 2003) (internal citations omitted).

If a plaintiff's claims of discrimination are based on circumstantial evidence, the Court applies the *McDonnell Douglas* burden-shifting analysis. *McClain v. Nw. Community Corr. Ctr. Judicial Corr. Bd*., 440 F.3d 320, 332 (6th Cir. 2006). That analysis may be summarized as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (quoting *McDonnell Douglas*, 411 U.S. at 802). "Although intermediate evidentiary burdens shift back and forth under this framework, '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 143 (2000) (alteration in original).

To establish a *prima facie* case of age discrimination, the plaintiff must prove four elements: (1) the plaintiff was at least forty years old, and therefore a member of a protected class; (2) he or she suffered a materially adverse employment action; (3) he or

she was qualified for the position; and (4) he or she was replaced by a younger person, or similarly situated non-protected employees were treated more favorably than he or she was treated. *Moore v. City of Columbus*, 129 Fed. App'x 978, 980-81 (6th Cir. 2005) (*per curiam*); *Skalka v. Fernald Environmental Restoration Management Corp.*, 178 F.3d 414, 420 (6th Cir. 1999); *see also Birch v. Cuyahoga County Probate Court*, 392 F.3d 151, 165 n.12 (6th Cir. 2004) (setting forth similar elements in a *prima facie* case of failure to hire).

If a plaintiff meets his burden, the burden shifts to EPB to articulate a legitimate, nondiscriminatory reason for that plaintiff's termination. In order to show that a proffered legitimate, non-discriminatory reason for an adverse employment action is pretextual, a plaintiff must show "either (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate his discharge, or (3) that they were insufficient to motivate discharge." *Manzer v. Diamond Shamrock Chem. Corp.*, 29 F.3d 1078, 1084 (6th Cir. 1994)(internal citations omitted).

If the employer presents a legitimate non-discriminatory reason for the employee's termination, the burden shifts back to the employee to establish that the employer's proffered non-discriminatory reason is pretextual. This burden is met if the employee establishes that the proffered reason: (1) has no basis in fact; (2) is not the actual reason; or (3) is insufficient to explain the employer's actions. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000) (citing *Wheeler v. McKinley Enters.* 937 F.2d 1158, 1162 (6th Cir. 1991)). The Sixth Circuit has explained that if "the plaintiff was truly singled out for discharge because of age he or she should be able to develop evidence through the discovery process ..." *Id.* For example, a plaintiff meets his or her pretext burden "by

showing that he or she possessed qualifications superior to those of a younger co-worker working in the same position as the plaintiff." *Id.* "Alternatively, a plaintiff could show that the employer made statements indicative of a discriminatory motive." *Id.* "The guiding principle is that the evidence must be sufficiently probative to allow a fact finder to believe that the employer intentionally discriminated against the plaintiff because of age." *Id.*

### C. Plaintiff's Wrongful Discharge ADEA Claim Against EPB

In the instant case, Plaintiff has failed to establish the *prima facie* elements of an ADEA wrongful discharge claim. To establish a *prima facie* case, Plaintiff must show: (1) he is over forty years of age; (2) he suffered an adverse employment action; (3) he was otherwise qualified for the job; and (4) he was replaced by a younger worker or similarly situated non-protected employees were treated more fairly than he was treated. *Tuttle v. Metro. Gov.'t of Nashville*, 474 F.3d 307, 317 (6th Cir. 2007); *Adams v. Lucent Techs., Inc.*, No. 07-3269, 284 App'x 296, 301-305 (July 17, 2008).

Neither party disputes that: (1) Plaintiff was over forty years of age; (2) EPB terminated Plaintiff's employment; and (3) Plaintiff, absent the alleged actions that resulted in his termination, was qualified to do his job. With respect to the last *prima facie* element, however, Plaintiff has not presented facts that would lead a reasonable juror to conclude that he was replaced by a younger worker. *See* Amend. Compl. ¶ 3-5. In fact, EPB never filled Plaintiff's position following his termination. *See* Def.'s Br. at 14. Accordingly, the Court now turns to the question of whether Plaintiff was subjected to disparate, unfair treatment due to his age.

Plaintiff contends that "EPB had entered into a pattern and practice of attempting

-12-

to eliminate employees over the age of fifty whose benefits would increase, either by an early retirement buy-op [sic] or a re-structuring layoff."  *See* Pl.'s Br. at 2.  In order to make out a *prima facie* case under the theory of disparate impact discrimination, a plaintiff must identify a specific, identifiable employment practice or policy that caused a significant disparate impact on employees over 40 years of age.  *Smith v. City of Jackson,* 544 U.S. 228, 241 (2005).  Plaintiff must "through relevant statistical analysis prove that the challenged practice has an adverse impact on a protected group." *Butts v. McCullough,* 237 Fed. App'x. 1, 8 (6th Cir. 2007) (quoting *Isabel v. City of Memphis,* 404 F.3d 404, 411 (6th Cir. 2005) (relevant statistical analysis required to establish *prima facie* case of disparate impact discrimination under Title VII of the Civil Rights Act of 1964)); *see also Phillips v. Cohen,* 400 F.3d 388, 399 (6th Cir. 2005) (noting that need for statistical analysis for a prima facie disparate impact case under Title VII).

Here, Plaintiff  relies upon a chart which purportedly shows that "50+ [individuals are] no longer employed" by EPB to substantiate his claim.  *See* Pl.'s Br. at 2; Court Doc. 40-6, Pl.'s Ex. 5.  Plaintiff's evidence, however, which is both immaterial and irrelevant, fails to meet the stringent standard, which is imposed upon him.  The first page of this exhibit lists the names of seven individuals who appear to have brought discrimination claims against EPB that were based upon race, gender, disability, national origin, religious accommodation, and age.  Pl.'s Ex. 5.  Of the seven entries, only two individuals appear to have based their discrimination claims on age.  These two claims of age discrimination evidence nothing "more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts."  *Int'l Bhd, of Teamsters v. U.S.*, 431 U.S. 324, 336 (1977) (internal

-13-

citations omitted).  As such, this evidence is insufficient to fulfill Plaintiff's burden in sustaining his claim that EPB engaged in a pattern and practice of terminating employees over the age of fifty before they were able to qualify for pension or retirement benefits.

The remaining pages of the chart reflect EPB's response to one of Plaintiff's interrogatories, which sought information about "[h]ow many people voluntary [sic] and involuntary [sic] left EPB in the last [six] years and what are the addresses and telephone numbers of each."  Court Doc. No. 52, Def.'s Sup. Reply Br. at 1.  The chart lists employees whose employment with EPB ended within the previous six years irrespective of whether the employment ended voluntarily or involuntary, or whether they were terminated as a result of their age.  *Id.*  This irrelevant evidence must be disregarded by the Court.  *Godredson v. Hess & Clark, Inc.*, 173 F.3d 365, 374 (6th Cir. 1999); *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997) (stating that hearsay and irrelevant evidence must be disregarded in considering the response in opposition to a motion for summary judgment).

Moreover, this exhibit fails to establish whether EPB's early retirement program is motivated by an employee's age rather than experience.  The Supreme Court and the United States Court of Appeals for the Sixth Circuit have distinguished retirement policies targeting age from policies targeting seniority, upholding the latter under the ADEA.  *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 611 (1993) ("Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'"); *Lyon v. Ohio Educ. Ass'n & Prof'l Staff Union,* 53 F.3d 135, 139, 139 n.4 (6th Cir. 1995)

-14-

(acknowledging "the possibility that an employer who targets employees with a particular pension status on the assumption that these employees are likely to be older thereby engages in age discrimination," but finding that plaintiffs had "offered no facts that even hint at an improper motive" in drafting the pension plan at issue).

As the Sixth Circuit observed in *Lyon,* "[t]he ADEA was not intended to protect older workers from the often harsh economic realities of common business decisions and the hardships associated with corporate reorganizations, downsizing, plant closings and relocations." *Lyon*, 53 F.3d at 139 (quoting *Allen v. Diebold, Inc.,* 33 F.3d 674, 676-77 (6th Cir. 1994)). Plaintiff has failed to provide evidence from which a reasonable juror could conclude that EPB's early retirement program was motivated by an employee's age rather than being based upon an employee's experience. Thus, the Court finds that Plaintiff has failed to meet his *prima facie* burden for an ADEA claim. Accordingly, the Court will **DISMISS WITH PREJUDICE** Plaintiff's claim of ADEA wrongful termination against EPB.

### D.  Plaintiff's Failure to Transfer Claim

Plaintiff also claims that EPB's refusal to transfer him to another position was motivated by his age in violation of the ADEA. Pl.'s Br. at 7. Again, Plaintiff's *prima facie* burden requires him to establish that: (1) he is a over 40 years old; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by a younger person. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995); *Barnes*, 896 F.2d at1464. If Plaintiff establishes a *prima facie* case, EPB must articulate a legitimate, nondiscriminatory reason for not transferring Plaintiff. *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 184 (6th Cir. 2004). If EPB meets its burden, Plaintiff must show that

-15-

EPB's stated reason is a pretext for age discrimination. *Id.*

Plaintiff has failed to meet his *prima facie* burden because there is no evidence that Plaintiff suffered an adverse employment action. Plaintiff applied for transfer to an open position in EPB's Improvement Group. (Amend. Compl. ¶ 14.) Specifically, Plaintiff applied for an Engineer Tech II position in the Improvement Group. The request would have been a lateral move since he was already an Engineer Tech II in the new business department. (Def.'s Br. at 19.) "The denial of a lateral transfer is not an adverse employment action." *Williams v. Cingular Wireless,* LLC, No. 3:06-1205, 2008 U.S. Dist. LEXIS 1683 (M.D. Tenn. Jan. 9, 2008) citing *James v. Metro. Gov't of Nashville*, 243 Fed.Appx. 74, 78 (6th Cir. 2007). Accordingly, the Court will **DISMISS WITH PREJUDICE** Plaintiff's ADEA failure to transfer claim.

### E. Plaintiff's Hostile Work Environment Claim

Plaintiff also alleges that Defendants "illegally plac[ed] him in a hostile work environment." Amend. Compl. at ¶ 22-23. Plaintiff has failed, however, to identify the statutory or common law basis for this claim. The factual basis for Plaintiff's hostile work environment claim is based upon alleged mistreatment he received as a result of his age. Accordingly, the Court construes Plaintiff's vague allegation to constitute a hostile work environment claim pursuant to the ADEA. 29 U.S.C. § 623(a)(1).

To state a *prima facie* case that he suffered a hostile work environment in violation of the ADEA, Plaintiff must demonstrate that (1) he is forty years of age or older; (2) he was subject to harassment on the basis of age; (3) the harassment unreasonably interfered with his work performance and created an objectively intimidating, hostile, or offensive work

environment; and (4) there is a basis for holding the employer liable. *Crawford v. Medina Gen. Hosp.,* 96 F.3d 830, 834-35 (6th Cir. 1996).

For harassment to be actionable, "it must be sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment." *Id.* at 835 (citing *Meritor Sav. Bank v. Vinson,* 477 U.S. 57, 67 (1986)). The standard is both subjective and objective; not only must a plaintiff subjectively experience the environment as hostile, but it must be hostile in an objective sense as well. *See id.* The court must consider the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 23 (1993)).

Plaintiff has not presented sufficient evidence to establish a *prima facie* ADEA hostile work environment claim. Aside from simply stating that he was subjected to a hostile work environment, Plaintiff's Amended Complaint and brief contains no factual account of specific instances of harassment or being subjected to a hostile work environment. "In determining whether an environment is one that a reasonable person would find hostile or abusive and that the plaintiff in fact did perceive to be so, courts look at all of the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hafford v. Seider*, 183 F.3d 506, 512-513 (6th Cir. 1999) (internal citations omitted). Plaintiff here has

not provided the necessary evidence upon which a reasonable juror could conclude that the work environment he was subjected to was hostile or abusive.

Moreover, there is no basis for holding EPB liable. An employer is liable if it "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 804 n.11 (6th Cir. 1994) *quoting, Rabidue v. Osceola Refining Co.,* 805 F.2d 611, 621 (6th Cir. 1986). EPB had an established anti-harassment policy, which required employees to report any harassment, including harassment based upon age, to the employee's supervisor, the Human Resources Vice President, or Human Resources Consultant. Def.'s Br. at 27. Plaintiff, however, admits he never reported any harassment to his supervisors or human resource officers. Pl.'s Dep. at 240. Since Plaintiff "unreasonably failed to take advantage of preventative or corrective opportunities" so as to apprise EPB of the alleged harassment, there is no employer liability . *Hafford*, 183 F.3d at 512 citing *Faraher v. City of Boca Raton*, 524 U.S. 775, 805 (1998). Accordingly, the Court will **DISMISS WITH PREJUDICE** Plaintiff's ADEA hostile work environment claim.

### F.     Plaintiff's Retaliation Claim

Plaintiff also asserts "a charge of retaliation" against EPB. Amend. Compl. ¶ 23-27. Plaintiff, however, has failed to identify any statutory or common law basis for his "charge of retaliation." This claim could encompass a multitude of federal retaliation laws and constitutional rights, as well as state statutory and common law retaliation causes of action. For example, "[r]etaliation by a government employer against an individual who exercises his First Amendment rights constitutes a First Amendment violation." *Perry v. McGinnis*,

-18-

209 F.3d 597, 604 (6th Cir. 2000). While EPB is a governmental entity, Plaintiff's retaliation claim makes no mention of any First Amendment constitutional violation. As EPB correctly notes, if the Court were to allow Plaintiff's vague conclusory allegations to serve as a substitute for a recognized legal cause of action, an unwarranted burden of defense would be placed on it. *See e.g., Dickinson v. French*, 416 F. Supp. 429 (D.C. Ala. 1976); Def.'s Br. at 21. Thus, the Court finds Plaintiffs' retaliation claim fails to state a claim on which relief can be granted.

Even were the Court assume *arguendo*, however, that Plaintiff's claim is a retaliation claim pursuant to the ADEA, he has failed to provide sufficient evidence to establish a *prima facie* claim of ADEA retaliation[1]. 29 U.S.C. § 623(d); *Totherow*, 2005 U.S. Dist. LEXIS 43671, at * 1. A plaintiff's *prima facie* case of retaliation under the ADEA is established by showing: (1) that he engaged in a protected activity; (2) that the defendant had knowledge of his protected conduct; (3) that the defendant took an adverse employment action towards him; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Mickey v. Zeidler Tool and Die Co.,* 516 F.3d 516, 523 (6th Cir. 2008) (alteration in original) (quoting *Weigel v. Baptist Hosp. of E. Tenn.,* 302 F.3d 367, 381 (6th Cir. 2002) (internal citations omitted)).

Plaintiff's claims EPB retaliated against him after he made complaints concerning certain EPB's business practices, which did not relate to the instant ADEA claim or any

---

[1] 29 U.S.C. §623(d) provides that it "shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this Act."

other ADEA violations.  Amend. Compl. ¶¶ 24-27.  Complaints about EPB's business practices which do not relate to any violation of the ADEA do not constitute a protected activity. *See* 29 U.S.C. § 623(d).  Such actions do not fulfill the requirements for protected activity under the "opposition clause," which protects an employee against employer retaliation under the ADEA for opposing any practice that the employee reasonably believes to be a violation of ADEA.[2]  *Speck v. City of Memphis*, 594 F. Supp. 2d 905, 924 (W.D. Tenn. 2009).  Thus, the Court finds that Plaintiff has failed to present sufficient evidence to establish the *prima facie* elements of an ADEA retaliation claim.  Accordingly, Plaintiff's retaliation claim will also be **DISMISSED WITH PREJUDICE.**

---

[2]The Equal Employment Opportunity Commission ('EEOC') has identified a number of examples of "opposing" conduct which are protected by Title VII, and by extension the ADEA, including complaining to anyone (management, unions, other employees, or newspapers) about allegedly unlawful practices; refusing to obey an order because the worker thinks it is unlawful under the ADEA; and opposing unlawful acts by persons other than the employer, e.g., former employers, union, and co-workers.  See *Johnson v. Univ. of Cincinnati*, 215 F.33 561, 579-580 (6th Cir. 2000) (citing EEOC Compliance Manual p. 8006).

**IV.     CONCLUSION**

For the reasons explained above, Defendant's Motion for Leave to File Excess Pages [Court Doc. 30] is **GRANTED.**  Defendant's Motion for Summary Judgment [Court Doc. 31] is also **GRANTED.** Plaintiff's claims against Defendant are hereby **DISMISSED WITH PREJUDICE.**

The Clerk is directed to close the file.  A separate Judgment will issue.


SO ORDERED this 29th  day of May, 2009.



_____/s/Harry S. Mattice, Jr._____
HARRY S. MATTICE, JR.
UNITED STATES DISTRICT JUDGE